UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATINA DAVIS, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>COUNTY OF NAPA,<br><br>　　　　Defendant. | Case No. 21-cv-04603-JCS<br><br>**ORDER GRANTING MOTION FOR APPROVAL OF SETTLEMENT**<br><br>Re: Dkt. No. 78 |

## I. INTRODUCTION

This case was brought under the Fair Labor Standards Act ("FLSA") against the County of Napa by correctional officers who asserted claims for wages and overtime pay related to uncompensated pre-shift activities. Plaintiffs Katina Davis, Jae Steward, opt-in plaintiffs, and Defendant County of Napa ("the "County") have entered into a settlement agreement ("Settlement Agreement") and now bring a Joint Motion for Approval of Settlement Agreement ("Motion"). A hearing on the Motion was held on August 25, 2023. For the reasons set forth below, the Motion is GRANTED.[1]

## II. BACKGROUND

### A. Procedural Background

Plaintiffs are correctional officers employed by the County. They filed the Complaint on June 15, 2021, alleging that they spent approximately thirty minutes per shift engaging in pre-shift activities for which they were not compensated and that the County owed them overtime pay at 1.5 times their regular rate of pay for any time spent on those activities that exceeded the overtime

---

[1] The parties, including the individuals who have joined this action as opt-ins, have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

1  threshold. Dkt. No. 1.

2  On July 28, 2021, the County filed an Answer denying Plaintiffs' allegations and asserting,
3  *inter alia*, that the alleged pre-shift activities were non-compensable preliminary activities; that the
4  County never suffered or permitted the officers to perform such work; that the officers did not
5  arrive thirty minutes early to each shift; and that the time spent on pre-shift activities was de
6  minimis. Dkt. No. 11. The County further asserted that any overtime owed for these activities
7  was offset by the overtime premiums paid by the County under the collective bargaining
8  agreement covering Plaintiffs' employment, which provided Plaintiffs with overtime payments in
9  excess of what the FLSA required. *Id.*

10  Plaintiffs elected to file opt-in forms on behalf of similarly situated correctional offices
11  rather than moving for conditional collective action certification pursuant to 29 U.S.C. § 216(b).
12  Sixty-six correctional officers, including the two named plaintiffs, opted in to the lawsuit, dkt. nos.
13  22, 26. However, five opt-ins were dismissed pursuant to the stipulation of the parties because the
14  claims of four of them were untimely and one had signed a waiver of claims at the time of
15  separation from employment. Dkt. No. 49.

16  On September 30, 2022, the Court approved the parties' proposed joint discovery plan,
17  which permitted the County to depose the two named Plaintiffs, a random sample of ten opt-ins,
18  and two more opt-ins selected by the County. Dkt. No. 52. The discovery plan also permitted the
19  County to propound formal discovery on the named Plaintiffs, the random sample of opt-ins, and
20  the two opt-ins selected by the County, as well as informal discovery (not including depositions)
21  on the remaining opt-ins. *Id.*

22  The County propounded interrogatories and requests for production of documents on
23  named Plaintiffs, to which Plaintiffs responded, producing hundreds of pages of documents. Gray
24  Decl. ¶ 4. The County also propounded interrogatories and requests for production of documents
25  on the twelve sample opt-ins, to which ten opt-ins responded and produced documents. *Id*.
26  Plaintiffs also propounded discovery on the County and the County responded by producing
27  thousands of pages of documents, including records related to hours worked by Plaintiffs and opt-
28  ins and compensation paid, as well as policies, memoranda of understanding, and a large amount

1   of video surveillance data of the pre-shift activities of Plaintiffs and opt-ins. *Id.*

2       Both parties retained damages experts who created damages models using payroll data
3   provided by the County. Gray Decl. ¶ 5. The experts and counsel met informally to "share[ ]
4   models, answer[ ] questions, and refine[ ] their methodologies." *Id.* According to Plaintiffs'
5   counsel, "[t]hese damages models . . . were fairly consistent with each other [and] provided further
6   support for the Parties' assessment of the range of potential recovery in this case." *Id.*; *see*
7   *generally* Don Decl. Plaintiffs' expert concluded that "[a]t 27.3 minutes of uncompensated time
8   every shift, the model showed $54,120.94 in wages owed, or $108,241.88 with liquidated
9   damages included"; she noted, however, that "the actual testimony in this case showed a lower
10  average in the amount of time spent from the time workers retrieved their duty belt in the locker
11  room to the time that workers started their scheduled shift" and with this lower amount of
12  uncompensated time every shift (24.4 minutes), "the model showed $40,659.56 in wages owed, or
13  $81,319.12 with liquidated damages included." Don Decl. ¶¶ 7-8. Finally, she found that "if
14  workers could only recover for the unpaid time from the time they reported to operations until the
15  start of their shift -- an average of 21.8 minutes -- there would only be $29,057.33 in wages owed,
16  or $58,114.66 with liquidated damages." *Id.* ¶ 9. All of these estimates factored in the offsets
17  related to the premium rates paid under the collective bargaining agreement. *Id.* ¶ 5.

18      The parties engaged in informal settlement negotiations and participated in three settlement
19  conferences with Magistrate Judge Hixson, ultimately entering into a settlement agreement. *Id.* at
20  ¶¶ 9-10. At the time of the Settlement Agreement the parties were arranging for depositions but
21  no depositions had yet occurred. Motion at 10. All 61 opt-ins signed the agreement. Gray Decl.,
22  Ex. 1. After the Settlement Agreement had been finalized and most of the opt-in signatures had
23  been collected, however, the parties discovered a corrections officer who had been overlooked,
24  Terrence Thomas. *Id.* ¶¶ 30-32. Thus, the parties agreed to an addendum to the Settlement
25  Agreement allowing Thomas to opt in to the action and participate in the settlement. *Id.* All 61
26  Plaintiffs and opt-ins have signed the Settlement Agreement and Thomas has signed both an opt-in
27  form joining this action and the addendum to the Settlement Agreement. *Id.*, Exs. 1, 3, 4.

28

**B.    The Settlement Agreement**

In the Settlement Agreement, the Parties agreed to a total settlement amount of $115,000. Gray Decl., Ex. 1 (Settlement Agreement). Of this amount, Plaintiffs and opt-ins will receive a total of $73,200, with each individual's share based on the number of pay periods that individual worked during the covered period. Settlement Agreement ¶ 2(a). The amounts they will receive range from $323.79 to $1,364.55, with an average payout of $1,200 per opt-in. Settlement Agreement, Attachment A. The remaining $41,800 will be allocated for Plaintiffs' reasonable attorneys' fees ($38,737.39) and costs ($3,062.61) incurred in this action. Settlement Agreement ¶ 2(b). In return, Plaintiffs and opt-ins agree to a release of all overtime claims against the County under any legal theory relating to or arising from this Action and agree to dismiss the lawsuit with prejudice. *Id.* ¶ 5.

**C.    The Addendum**

Under the addendum to the Settlement Agreement, Terrence Thomas will be bound by all terms of the Settlement Agreement, including the Release of Claims and will receive $671.56, which will be paid at the same time and on the same terms as the payments to the opt-ins outlined in Exhibit A to the Settlement Agreement. Thomas's recovery will come from the $38,737.39 in Plaintiffs' attorney's fees referenced in the Agreement, bringing the total fee amount down to $38,065.83.

**III.    ANALYSIS**

**A.    Legal Standards**

"[C]laims for unpaid wages under the FLSA may only be waived or otherwise settled if settlement is supervised by the Secretary of Labor or approved by a district court." *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016). While the Ninth Circuit has not established criteria for district courts to consider in determining whether a FLSA settlement should be approved, "courts in this district apply the Eleventh Circuit's widely-followed standard set forth in [*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982)] and consider whether the proposed settlement constitutes a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Dunn v. Tchrs. Ins. & Annuity Ass'n of*

4

1  *Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016) (quoting *Otey v.*
2  *CrowdFlower, Inc.*, No. 12-cv-05524, 2015 WL 6091741, at *4 (N.D. Cal. Oct. 16, 2015) (quoting
3  *Lynn Food Stores*, 679 F.2d at 1355)). "If a settlement in an employee FLSA suit . . . reflect[s] a
4  reasonable compromise over issues . . . that are actually in dispute," the district court may approve
5  the settlement. *Lynn's Food Stores*, 679 F.2d at 1354.

To determine whether a FLSA settlement is fair and reasonable, courts evaluate the "totality of the circumstances" within the context of the purposes of the FLSA. *Slezak v. City of Palo Alto*, No. 16-cv-03224-LHK, 2017 WL 2688224, at *3 (N.D. Cal. June 22, 2017) (citing *Selk*, 159 F. Supp. 3d at 1173).  In *Selk*, the court set forth the following factors to be considered:

> (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion.

*Id.*

### B.  Discussion

#### 1.  Whether there is a bona fide dispute

The Court finds that there is a bona fide dispute between the parties regarding liability as Plaintiffs allege that they perform thirty minutes of necessary work prior to each shift for which they are entitled to overtime while the County contends the activities are non-compensable, that the time spent on them is de minimis, and that it is entitled to substantial offsets due to the overtime premiums Plaintiffs receive under their collective bargaining agreement.   Therefore, this requirement is satisfied.

#### 2.  Whether the terms of the Settlement Agreement and Addendum are fair and reasonable

The Court also finds that the Settlement Agreement and Addendum are fair and reasonable under the totality of the circumstances based on consideration of the factors set forth in *Selk*.

a. Range of Possible Recovery

Under the Settlement Agreement, Plaintiffs and opt-ins will receive a total sum of $73,200 exclusive of attorneys' fees and costs. Plaintiffs have presented evidence that this amount represents close to the maximum range of what Plaintiffs might be able to recover given the offsets the County would be entitled to. Don Dec., ¶¶ 7-10. In particular, the average time from retrieval of the duty belt to the start of the shift reported in the discovery responses of the two named Plaintiffs and ten of the opt-ins was 24.4 minutes. Don Dec., ¶ 8. At 24.4 minutes of uncompensated time every shift, the model developed by Plaintiffs' expert showed $40,659.56 in wages owed, or $81,319.12 with liquidated damages included. *Id*. Thus, the amount of the overall recovery for the Plaintiffs and opt-ins supports approval of the settlement.

Furthermore, the recovery of each individual plaintiff and opt-in is fair and reasonable because the individual payout amounts were calculated by Plaintiffs' damages expert using payroll data for each individual supplied by the County and a methodology that appears to be sound. Don Decl. ¶¶ 4-5. The fact that each Plaintiff and opt-in has signed the Settlement Agreement, which specifically lists the individual pay-outs under the agreement, lends further support to the conclusion that this factor supports approval of the Settlement Agreement.

b. Stage of the Proceeding

As discussed above, the parties engaged in both formal and informal discovery before settling this case, allowing them to evaluate the strengths and weaknesses of the case, both legal and factual. They also retained damages experts who were able to use the information obtained in discovery to determine the range of damages that might be awarded were Plaintiffs to prevail in the case. Finally, the parties engaged in several settlement conferences with Magistrate Judge Hixson as well as informal settlement negotiations. All of these facts point to the conclusion that the Settlement Agreement is fair and reasonable. Therefore, the Court finds that this factor favors approval of the Settlement Agreement.

c. Seriousness of Risk that Litigation Would Result in Lesser Recovery

Because the amount of the recovery under the Settlement Agreement approaches the maximum damages Plaintiffs might have been able to obtain through further litigation, there was a

6

1  significant risk that continuing to litigate rather than settling the case would reduce the amount
2  that Plaintiffs and opt-ins would receive. For example, the planned depositions of the named
3  Plaintiffs and opt-in sample could have resulted in the discovery that the time spent on pre-shift
4  activities was actually less than Plaintiffs alleged in the Complaint. Therefore, this factor supports
5  approval of the Settlement Agreement.

### d. Scope of Release

"A FLSA release should not go beyond the specific FLSA claims at issue in the lawsuit itself." *Slezak*, 2017 WL 2688224, at *5 (citing *Daniels v. Aeropostale W., Inc*., 2014 WL 2215708, at *4 (N.D. Cal. May 29, 2014)). Here, the release in the Settlement Agreement states as follows:

> 5. **Release of Claims**. Plaintiffs and Opt-Ins, on behalf of themselves and their spouses, domestic partners, heirs, representatives, executors, agents, attorneys, administrators, successors-in-interest, and assigns, irrevocably and unconditionally release and discharge Defendant, and all of its departments, officers, employees, attorneys, and agents, and any other person acting by, through or in concert with it, from any and all lawsuits, claims, actions, demands or other legal responsibilities of any kind that Plaintiffs and Opt-Ins have, or may have, against Defendant, which were or could have been asserted in the Action, arising from or related to the facts alleged in the Complaint, up to the date of the Parties' execution of this Agreement. Plaintiffs and Opt-Ins expressly acknowledge that this release includes, but is not limited to, any and all claims for failure to pay overtime required under federal or state law or contractual agreement based on Defendants' alleged failure to compensate them for activities they allegedly performed in advance of their shifts. Plaintiffs and Opt-Ins also acknowledge and agree that this release is an essential and material term of this Agreement and without such release, no settlement would have been reached by the Parties.

Settlement Agreement ¶ 5. This release is similar to the release approved by the court in *Slezak*, where the release waived the right to bring FLSA claims "on the grounds alleged in the lawsuit that may exist or have existed as of and including the Effective Date of the Agreement" but that reserved the plaintiffs' right to "pursue any FLSA claims that they might have for events occurring after the Effective Date of this agreement." Further, the parties confirmed at the motion hearing that this provision is intended to be limited to wage and hour claims based on the facts contained in the complaint. The Court therefore concludes that the scope of the release in the Settlement Agreement is acceptable and supports approval.

7

    e. Experience and Views of Counsel

Plaintiffs' counsel, who are experienced attorneys, believe that the Settlement Agreement is fair and reasonable. Gray Decl. ¶ 10. Therefore, this factor favors approval of the Settlement Agreement.

    f. Absence of Fraud or Collusion

There is no indication that the Settlement Agreement was the result of fraud or collusion. Instead, the evidence shows that it was the result of arms-length negotiation, facilitated by an impartial mediator. Therefore, this factor supports approval of the Settlement Agreement.

    g. Attorneys' Fees

The Court also finds that the fees and costs that will be paid to counsel under the Settlement Agreement are reasonable.

Prevailing plaintiffs are entitled to reasonable attorneys' fees and costs under the FLSA. *See* 29 U.S.C. § 216(b). "Under Ninth Circuit precedent, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method for awarding attorneys' fees." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011). However, "in fee-shifting statute cases[,]" "the lodestar method is favored." *Norris v. Mazzola*, No. 15-CV-04962-JSC, 2017 WL 6493091, at *11 (N.D. Cal. Dec. 19, 2017) (citing *Tahara v. Matson Terminals, Inc.*, 511 F.3d 950, 955 (9th Cir. 2007)). This approach is justified because use of the lodestar "ensure[s] compensation for counsel undertaking socially beneficial litigation." *Rose v. Bank of Am. Corp.*, No. 5:11-CV-02390-EJD, 2014 WL 4273358, at *6 (N.D. Cal. Aug. 29, 2014) (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995) (observing that when "the lodestar award is de-coupled from the class recovery, the lodestar assures counsel undertaking socially beneficial litigation (as legislatively identified by the statutory fee shifting provision) an adequate fee irrespective of the monetary value of the final relief achieved for the class")).

Here, Plaintiffs have provided evidence of the hours worked on this case and the fees charged, giving rise to a lodestar of $277,560.50 based on 611.3 hours at rates between $325.00

and $750.00. Gray Decl. ¶¶ 12-28.  The Court has reviewed the evidence supplied by Plaintiffs and concludes that both the rates and time are reasonable.  Furthermore, the attorneys' fees Plaintiffs seek under the Settlement Agreement ($38,065.83, factoring in the payment to Thomas under the Addendum) represent a 14% *negative* multiplier on that amount, further supporting the conclusion that the Settlement Agreement should be approved.

The Court recognizes that the fees requested are slightly higher than might be awarded under the percentage-of-the recovery approach, amounting to approximately 33% of the total award rather than the benchmark 25%.  The Court nonetheless finds the fee amount to be fair and reasonable given the favorable result obtained for the Plaintiffs and opt-ins under the Settlement Agreement, which is the most important factor in determining the reasonableness of a fee award. *See Norris v. Mazzola*, No. 15-CV-04962-JSC, 2017 WL 6493091, at *13 (N.D. Cal. Dec. 19, 2017) (finding that fee award was reasonable even though it was approximately 44% of the total settlement fund where the amount was lower than the actual lodestar and in light of the overall result).

### h. Litigation Costs

Plaintiffs' counsel have spent $3,062.61 in actual litigation expenses, including filing fees, costs of service of process, electronic research, travel for appearances, and other reasonable litigation-related costs. Gray Decl., ¶ 38, Ex. 2. Attorneys are entitled to be reimbursed for their out-of-pocket expenses incurred in creating a common fund for the benefit of a class so long as the submitted expenses are reasonable, necessary, and would typically be billed to paying clients.  *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008).  The Court finds that the costs are reasonable, necessary and of the kind that would normally be passed on to clients.

## IV. CONCLUSION

The Court finds that there is a bona fide dispute and that on balance, the Settlement Agreement and the Addendum are fair and reasonable. Therefore, the Motion is GRANTED and the Court approves the Settlement Agreement and the Addendum to the Settlement Agreement. The Parties are ordered to comply with all terms and provisions of the Settlement Agreement and Addendum. The Court directs payment to the Opt-Ins pursuant to the terms of the Settlement Agreement and Addendum and awards $38,065.83 in attorneys' fees and $3,062.61 in costs to Plaintiffs' and Opt-Ins' Counsel, Weinberg, Roger & Rosenfeld APC, in accordance with the terms of the Settlement Agreement. The Court retains jurisdiction over the implementation and enforcement of the Settlement Agreement until each and every act agreed to be performed by the Parties has been performed.

**IT IS SO ORDERED.**

Dated:   September 5, 2023

JOSEPH C. SPERO
United States Magistrate Judge